TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
KEVIN J. BUTLER (Cal. Bar No. 329129)
KALI M. YALLOURAKIS (Cal. Bar No. Pending)
MONIKA L. HARA (Cal Bar No. 323017)
Assistant United States Attorneys
        1300 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-6495
        Facsimile: (213) 894-0141
        E-mail:    kevin.butler@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>                  v.<br><br>RANDY PAUL RUIZ<br><br>             Defendant. | No. 2:25-cr-00680-SVW<br><br>NOTICE OF FACTS AND AUTHORITIES<br>REGARDING JURISDICTION |

     Based on the Court's inquiry at the Final Pretrial Conference in this matter on January 5, 2026 (and previous inquiry on November 26, 2025), plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Kevin J. Butler, hereby files this notice of authorities addressing 18 U.S.C. § 231(a)(3)'s jurisdictional element of interstate commerce and a federally protected function.

//

Dated: January 22, 2026          Respectfully submitted,

                                 TODD BLANCHE
                                 Deputy Attorney General
                                 BILAL A. ESSAYLI
                                 First Assistant United States
                                 Attorney


                                        /s/
                                 _____
                                 KEVIN J. BUTLER
                                 KALI M. YALLOURAKIS
                                 MONIKA L. HARA
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

## NOTICE OF FACTS AND AUTHORITIES

At the Final Pretrial Conference on January 5, 2026, this Court made various inquiries to government counsel relating to the charge's jurisdictional element, including how the government planned to prove -- and what discovery it had provided regarding -- interstate commerce or a federally protected function. Both before and after that conference, the Court continued the trial date in this case apparently due to a challenge that defendant Ruiz makes to jurisdiction in this case.[1]

In an effort to elucidate the government's sound legal footing and put to rest any counterarguments, the government provides the following. Jurisdictionally, the statute requires that the civil disorder "**in any way or degree obstructs**, delays, or adversely affects commerce or the movement of any article or commodity in commerce **or** the conduct or performance of any federally protected function.[2] 18 U.S.C. § 231(a) (emphasis added). Thus, the government may prove obstruction, delay, or adverse effect on either commerce or a federally protected function. At trial, the government will prove both.

As to commerce, Courts have uniformly held that the effect on commerce may be de minimus or even potential, whether that be in a

---

[1] The majority of the defense arguments have been in camera, purportedly because they pertain to the "theory of the defense." The undersigned AUSAs are not privy to the related litigation and defer to the Acting Criminal Division Chief as to any positions taken in that regard. But, as to the theory of the defense, the hearing took place on the eve of trial. At some point, the parties must put their cards on the table as trials are a search for the truth, based on the facts, not an attempt to win, based on stratagem.

[2] A federally protected function is any carried out by any department, agency, or instrumentality of the United States or any officer or employee thereof. 18 U.S.C. § 232(3).

§ 231 prosecution, or identically worded statutes.  United States v. Pugh, 90 F.4th 1318 (11th Cir. 2024) (in § 231(a) prosecution, government had to establish only that civil disorder had minimal effect on interstate commerce, rather than substantial effect); see also United States v. Huynh, 60 F.3d 1386, 1389 (9th Cir. 1995) (statute that requires the same language regarding interstate commerce only requires actual impact, "however small," or even "probable or potential impact," even where connection to commerce "slight").[3]  And the government need not prove that the defendant's acts specifically affected commerce.  See United States v. Fuller, 2025 WL 511031, at *2 (D.D.C. Jan. 16, 2025) ("[T]he Government [must] prove that [a] civil disorder -- not Defendants -- obstructed, delayed, or adversely affected the performance of a federally protected function.").

*First*, the government has always asserted and will prove at trial that United States Route 101 -- a major interstate highway from California to Washington -- was shut down due to the civil disorder prior to the defendant's charged conduct.  See Complaint, Dkt. 1 at ¶ 10; USAO_000216 (Portion of CHP Incident Detail Report), attached hereto as Exhibit A; USAO_000767-68 (Portion of LAPD Command Post Chronology Log), attached hereto as Exhibit B.  Unequivocally, this meets the commerce element.  Pugh, 90 F.4th at 1327-28 (defendant's interfering with police officer's ability to open interstate highway by disabling police car near exit ramp was "quintessential" example

---

[3] Undersigned counsel previously filed a brief before this Court regarding the required effect of interstate commerce in the context of 18 U.S.C. § 1951(a), which uses the same language as 18 U.S.C. § 231(a): "in any way or degree obstructs, delays, or [adversely] affects commerce or the movement . . . ."  See United States v. Herrera, 24-CR-390-SVW, at Dkt. 25.

of nexus between criminal act and interstate commerce).  *Second*, the parties have stipulated that Waymo is a self-driving vehicle company that operates in interstate commerce and that its vehicles were destroyed during the civil disorder on June 8, 2025.  See Trial Stipulation No. 1, attached hereto as Exhibit C.  This, too, independently satisfies the commerce element.  See United States v. Mayes, No. 18-CR-154-PP, 2022 WL 203373, at *8 (E.D. Wis. Jan. 24, 2022) ("it is easy to see how that civil disorder could obstruct or delay commerce.  The unrest that occurred between August 13 and 15, 2016 involved arsons of retail businesses, obstruction of roads and other types of commercial obstruction.").[4,5]

As to a federally protected function, the government has always asserted and will prove at trial that the functions of the Bureau of Prisons Metropolitan Detention Center ("MDC") were delayed, obstructed, and hindered by the civil disorder.  See Complaint, Dkt. 1 at ¶ 8.  While the functions of MDC, Roybal, and the federal complex at Temple and Alameda were affected in a myriad of ways, the government will provide testimony at trial that MDC employees were unable to safely enter the building or parking structure, parked elsewhere, dressed down to appear as civilians, and required police

---

[4] LAPD officers will also testify that businesses in the area were boarded up, closed, or vandalized.  See USAO_000755-76 (Pretrial Interview with LAPD), attached hereto as Exhibit D.

[5] The government also notes that the Supreme Court has found that government agencies -- such as LAPD, or BOP -- themselves affect commerce.  See United States v. Laton, 352 F.3d 286, 293 (6th Cir. 2003 ("The Supreme Court has noted on several occasions the impact that certain federal, state, and local government institutions can have on interstate commerce." (citing Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 537, 547-48 (1985); Lehman v. City of Shaker Heights, 418 U.S. 298, 303 (1974); United States v. Kokinda, 497 U.S. 720, 725 (1990); Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992).

escort to enter the building -- significantly delaying their arrival. See USAO_000745-46 (Pretrial Interview with MDC), attached hereto as Exhibit E.  Categorically, this delays the federally protected function and ends the inquiry.  Nonetheless, the government will also present evidence that LAPD officers were deployed specifically to the entrance of the federal complex -- which was overrun by protestors -- and deployed specifically to clear protesters from that area for the same purpose, and that inside of those buildings, resources were surged to protect the building.  See, e.g., Exhibit D.  Additionally, both LAPD and MDC witnesses will testify that visitations were made impossible by the protests and that all visitations were ceased on June 8, 2025 (the date of the civil disorder).[6]  Id.  Again, the government need not prove that the defendant even participated in that portion of the civil disorder, only that his acts occurred during that disorder.  See United States v. Dahlquist, 2025 WL 208018, at *4 (D.D.C. Jan. 15, 2025) ("[Section] 231(a)(3) is 'clear that an individual charged under this provision need not have participated in the civil disorder—rather, the alleged crime must have occurred *during* an ongoing civil disorder.'") (quoting United States v. Gillespie, 2022 WL 17262218, at *2 (D.D.C. Nov. 29, 2022)).

Though the government is disadvantaged because it is not privy to the in camera arguments lobbied to the Court which have spurred the Court's inquiry into the jurisdictional elements of this crime, they are not in dispute.[7]  The offer of proof above, and multiple

---

[6] While visitations for MDC typically end at 1 p.m. on Sundays, visitations were ceased going forward and law enforcement and counsel "Point of Contacts" were informed in the early evening of June 8 that visitations were halted due to the civil disorder.  See Exhibit E.

[7] Indeed, *defendant's own motion to dismiss admits* this point.
*(footnote cont'd on next page)*

4

cases, firmly establish each disjunctive element in multiple ways and -- should the continued secretive filings challenge these -- the Court should rely on these uncontested facts and law to reject such arguments.

Dkt. 48 at 19 ("[a] charge under § 231(a)(3) need not be supported by evidence that a defendant's act impacted interstate commerce. Instead, it requires evidence only that the act interfered with an officer engaged in the performance of duties 'incident to and during the commission of a civil disorder,' and that the civil disorder, not the individual's act, minimally affected commerce.").